Hillsborough-northern judicial district
No. 95-119

### THE STATE OF NEW HAMPSHIRE

v.

### DAVID GUENZEL

February 15, 1996

*Jeffrey R. Howard,* attorney general (*Susan G. Morrell* and *Mark S. Zuckerman,* assistant attorneys general, on the brief, and *Ms. Morrell* orally), for the State.

*Twomey & Sisti Law Offices,* of Concord (*Nicholas K. Holmes* on the brief and orally), for the defendant.

BROCK, C.J. In this interlocutory appeal from ruling, *see* SUP. CT. R. 8, the defendant argues that a voluntary forfeiture of his

property creates a double jeopardy bar preventing his criminal prosecution for conspiracy to purchase a controlled drug. The Superior Court (*Sullivan*, J.) held that no such bar was created because no civil forfeiture proceedings were initiated and hence no State-imposed punishment occurred. We affirm and remand.

In September 1993, the defendant, David Guenzel, was arrested by an undercover officer after offering to trade two concert tickets for a sample of LSD. The police seized three thousand dollars in cash and fifty concert tickets that Guenzel had on his person. Later that evening, the police asked Guenzel if he would be willing to work as an informant. He agreed to do so, and both Guenzel and Detective Thomas of the New Hampshire Drug Task Force executed a "Cooperating Individual Agreement."

Three days later, Guenzel met with officers of the task force and signed another agreement. This agreement, made "in consideration of [Guenzel's] being allowed to cooperate and assist the State of New Hampshire," "voluntarily forfeit[ed]" to the State the cash and all fifty concert tickets valued at $1,354. The agreement included: (1) his acknowledgement that all the forfeited property was knowingly used or intended for use by him in the distribution of a controlled drug or constituted profits or proceeds of his drug trafficking activities in violation of RSA chapter 318-B; and (2) his acknowledgement and waiver of rights under RSA 318-B:17-b, :17-d (1995) (the forfeiture provisions of the statute). The latter included an acknowledgement that the State could initiate a formal forfeiture proceeding if he attempted to withdraw from the agreement.

Guenzel was later indicted on three felony charges: (1) conspiracy to purchase a controlled drug, LSD, RSA 318-B:2 (1995); RSA 629:3 (1986); (2) attempted purchase of a controlled drug, LSD, RSA 318-B:2 (1995); RSA 629:1 (1986); and (3) felonious use of a firearm, RSA 650-A:1 (1986). He moved to dismiss these charges, arguing that the double jeopardy provisions of part I, article 16 of the New Hampshire Constitution and the fifth amendment to the United States Constitution barred his prosecution. We will address the issue raised under the State Constitution independently, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), referring to federal cases only "for their guidance in analyzing and deciding the State issue[]." *State v. Fitzgerald*, 137 N.H. 23, 26, 622 A.2d 1245, 1246 (1993); *see Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983). Because we conclude that the State Constitution provides the defendant at least as much protection as the Federal Constitution, we need not conduct a separate federal analysis. *Fitzgerald*, 137 N.H. at 26, 622 A.2d at 1247; *see United States v. Halper*, 490 U.S. 435, 448-51 (1989).

The double jeopardy clause of the New Hampshire Constitution protects against successive prosecutions for the same offense after acquittal or after conviction, and against multiple punishments for the same offense. *Fitzgerald*, 137 N.H. at 25, 622 A.2d at 1246; *see North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The present case involves a claim that the latter prong was violated: that Guenzel will be subject to multiple punishments if the State is permitted to go forward with its prosecution of the criminal charges.

The superior court transferred the following questions for our consideration, *see* SUP. CT. R. 8:

(A) Where a defendant agrees to forfeit to the State property pursuant to an agreement based upon RSA 318-B:17-b & d, has the defendant suffered a civil sanction?

(B) If such a forfeiture is a civil sanction, is it in part punitive, rather than solely serving a remedial purpose?

(C) If such a sanction is in part punitive, is a subsequent prosecution for offenses based upon the same conduct barred by the double jeopardy clauses of the State and Federal Constitutions?

■ The State concedes that, under certain circumstances, a civil or administrative sanction may rise to the level of a punishment that triggers double jeopardy protection. *See Department of Revenue of Montana v. Kurth Ranch*, 114 S. Ct. 1937, 1945-46 (1994); *Halper*, 490 U.S. at 448-51. To the extent that a civil sanction cannot fairly be characterized as serving a remedial purpose, but rather can only be explained as a deterrent or retribution, that sanction constitutes "punishment, as we have come to understand the term," and will trigger double jeopardy protection. *Halper*, 490 U.S. at 448-49.

In *Austin v. United States*, 113 S. Ct. 2801, 2810-12 (1993), the United States Supreme Court, applying the *Halper* analysis, held that certain civil forfeitures under the federal drug statute are properly considered punishment for purposes of the excessive fines clause of the eighth amendment to the Federal Constitution. The Court examined the history of civil forfeiture and concluded that "forfeiture generally and statutory *in rem* forfeiture in particular historically have been understood, at least in part, as punishment." *Id.* at 2810. The Court also analyzed the current federal civil forfeiture statute for indicia of punitiveness. It noted that the statute focused on the culpability of property owners by exempting innocent owners and lien holders. 21 U.S.C. § 881(a)(4)(C), (a)(7) (1994). The Court further observed that Congress tied forfeiture directly to the commission of specified offenses. All these factors led

the Court to hold federal civil forfeitures to be punishment. *Austin*, 113 S. Ct. at 2810-12.

We need not decide whether we would reach the same conclusion in applying the *Austin-Halper* analysis in the context of the (State or federal) double jeopardy clause to the New Hampshire forfeiture statutes, RSA 318-B:17-b, :17-d. Guenzel would not prevail even if we were to decide that question in the affirmative.

■ Even if we did so hold, the facts of this case do not implicate double jeopardy. As the trial court found, Guenzel's forfeiture of the property was purely voluntary and not the result of any State-initiated forfeiture proceeding. Guenzel has not challenged the finding that the forfeiture was voluntary. Accordingly, no civil sanction was imposed by the State: a legal forfeiture does not take place unless civil forfeiture proceedings are properly initiated as set forth specifically in the statute. *See* RSA 318-B:17-b, :17-d. A voluntary act does not constitute a punishment "imposed on the individual by the machinery of the state." *Kurth Ranch*, 114 S. Ct. at 1944-45 (quotation omitted).

■■ This is not a situation where Guenzel and the drug task force agreed to the forfeiture, initiated a forfeiture proceeding in court, and then had the court formally endorse their agreement through a consent judgment. If they had done so, and assuming the *Austin/Halper* analysis applies to the New Hampshire forfeiture statute under New Hampshire double jeopardy law, the court's judgment would constitute a State-imposed punishment, and the instant criminal prosecution would implicate double jeopardy. *Cf. State v. Moses*, 128 N.H. 617, 619-20, 517 A.2d 839, 841-42 (1986) (double jeopardy bars subsequent prosecution where prior conviction, of lesser included offense, was entered by court after plea of *nolo contendere*). In contrast, however, here the court system was not involved at all; the civil forfeiture procedures outlined in the statute were not even initiated. *See* RSA 318-B:17-b, :17-d. The "machinery of the state" did not "impose" anything on Guenzel. *Kurth Ranch*, 114 S. Ct. at 1944-45 (quotation omitted). Instead, he voluntarily gave up his interest in the property prior to the initiation of any forfeiture proceedings, "in consideration of being allowed to cooperate" with the State. Guenzel's opportunity to become an undercover informant was not punishment. If anything, it gave him the opportunity to earn some mitigation of whatever punishment he might later be subjected to after a criminal prosecution.

■■ Guenzel argues that he suffered punishment because "what took place had all of the hallmarks of an *in rem* forfeiture."

According to him, "[w]hether what the Drug Task Force did was technically permissible under the drug forfeiture statute is not what is significant." We disagree. The fact that the agreement said this was a forfeiture pursuant to RSA chapter 318-B does not make it so. The statute requires a specific set of procedures before there is a civil forfeiture. RSA 318-B:17-b, :17-d. Here, no procedure was even begun. Whether or not Guenzel may have other remedies for the nonstatutory procedure followed by the task force, the dismissal of his criminal charges on double jeopardy grounds is not one of them. Without a proceeding properly initiated, there was no valid *in rem* forfeiture under the statute. Without a forfeiture, a voluntary relinquishment of property rights such as Guenzel's is not State-imposed punishment. And without some form of punishment, no prior jeopardy existed to preclude the instant criminal prosecution. Courts in other jurisdictions have rejected double jeopardy claims in analogous circumstances. *See, e.g., United States v. Torres,* 28 F.3d 1463, 1465-66 (7th Cir. 1994), *cert. denied,* 115 S. Ct. 669 (1994) (even though the State initiated a forfeiture proceeding, there was no imposition of punishment upon the defendant since he never made a claim to the property).

Consequently, we affirm the trial court's decision that Guenzel's voluntary forfeiture of his interest in this property did not constitute a punishment triggering double jeopardy analysis.

*Affirmed and remanded.*

BRODERICK, J., did not sit; the others concurred.