Merrimack
No. 96-266

THE STATE OF NEW HAMPSHIRE

v.

GLENDON P. DREWRY, JR.

December 23, 1996

*Jeffrey R. Howard*, attorney general (*John A. Stephen*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

BRODERICK, J. In this interlocutory appeal, the defendant, Glendon P. Drewry, Jr., challenges the Superior Court's (*McGuire*, J.) ruling that an administrative license suspension pursuant to RSA 263:56, I (1993) is not punishment for purposes of double jeopardy under the State and Federal Constitutions. We affirm and remand.

On March 8, 1992, two people were killed as a result of an automobile accident involving the defendant. In May 1992, a grand jury indicted the defendant on four alternative counts of negligent homicide. *See* RSA 630:3 (Supp. 1992) (amended 1993). In November 1992, the New Hampshire Department of Safety held a license suspension hearing based upon a complaint alleging that the defendant's conduct on March 8th "materially contribut[ed] to an accident resulting in the deaths of Barry and Sandra Frosch." The hearing examiner concluded that the defendant caused the two deaths by driving "in an unlawful, unsafe, reckless manner, failing to properly maintain control of his vehicle while crossing the center line under the influence of intoxicating liquor." The defendant's license was suspended for three years. *See* RSA 263:56, I(g).

Prior to trial on the negligent homicide indictments, the defendant moved to dismiss the criminal charges. He argued that the State could not again seek to punish him for the conduct that formed the basis of the license suspension without violating the double jeopardy clauses of the State and Federal Constitutions. The trial court denied the motion and this interlocutory appeal followed.

The double jeopardy clauses of the New Hampshire and United States Constitutions protect an accused "against multiple prosecutions and multiple punishments for the same offense." *State v. Fitzgerald*, 137 N.H. 23, 25, 622 A.2d 1245, 1246 (1993). The question in this case is whether the three-year suspension of the defendant's driver's license constitutes punishment for double jeopardy purposes, so as to preclude prosecution of the criminal charges against him. We consider the defendant's argument first under the State Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), relying upon federal decisions only for guidance in illuminating the State constitutional issue, *see Fitzgerald*, 137 N.H. at 26,

622 A.2d at 1246. Because in this instance federal law provides no greater protection to the defendant, we undertake no separate federal analysis. *See id.* at 26, 622 A.2d at 1247; *United States v. Imngren*, 98 F.3d 811, 815-17 (4th Cir. 1996).

■ In deciding whether the defendant's administrative license suspension is punishment under part I, article 16 of the State Constitution, we first inquire whether the legislature intended that this statutory penalty be considered civil or criminal. *See Fitzgerald*, 137 N.H. at 26, 622 A.2d at 1247. In *State v. Cassady*, 140 N.H. 46, 662 A.2d 955 (1995), we concluded that the statutory provisions creating the administrative license suspension process in RSA 265:91-a (1993) (amended 1995) "contain no indication that the legislature intended the process to be criminal in nature." *Cassady*, 140 N.H. at 48, 662 A.2d at 958. Though this case concerns an administrative license suspension pursuant to RSA 263:56, the defendant does not dispute that the legislature intended this license suspension process to be civil as well.

This determination does not end our inquiry, for we also must ask "whether the penalty imposed as a result of a [license suspension] proceeding is so punitive that it must be considered criminal punishment for purposes of the double jeopardy clause." *Id.* at 49, 662 A.2d at 958. Only the "clearest proof" will serve to override the legislature's intention that a penalty be civil. *See Fitzgerald*, 137 N.H. at 28, 622 A.2d at 1247. Because the person affected might well view any administrative action as "punishment," our inquiry on this point is objective, *see State v. Hickam*, 668 A.2d 1321, 1327 (Conn. 1995), *cert. denied*, 116 S. Ct. 1851 (1996), and we consider, among other factors, whether the penalty involves an "affirmative disability or restraint," whether it has "historically been regarded as a punishment," and whether it serves to promote "the traditional aims of punishment — retribution and deterrence," *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 365 n.7 (1984).

■ Under RSA 263:56, the director of the division of motor vehicles has the authority to suspend the license of a driver who is shown to have "by reckless or unlawful operation of motor vehicle caused or materially contributed to an accident resulting in death or injury to any other person." RSA 263:56, I(g). Though a license suspension imposed pursuant to this authority might appear to be an affirmative restraint, "it is actually the revocation of a privilege voluntarily granted, a traditional attribute of a remedial action." *State v. Strong*, 605 A.2d 510, 513 (Vt. 1992) (quotation and citation omitted). Moreover, when, as in this case, the suspension serves the purpose of removing irresponsible drivers from the State's high-

ways for the public's protection, it has been consistently viewed as nonpunitive in nature. *See Cassady*, 140 N.H. at 49, 662 A.2d at 958; *State v. Morrill*, 123 N.H. 707, 712, 465 A.2d 882, 886 (1983); *State v. Bowles*, 113 N.H. 571, 574, 311 A.2d 300, 302 (1973).

■ The defendant nonetheless contends that his license suspension is punitive because it has a deterrent effect, and because RSA 263:56, IV (1993), which allows a hearing examiner to consider testimony from a deceased's next of kin in making a determination, gives the process a retributive cast. It will be the rare administrative penalty, however, that does not have some deterrent effect, *see Hickam*, 668 A.2d at 1327, and "the fact that something akin to punishment occurs along with, and incidental to, a sanction's overriding remedial purpose will not transform a permissible civil penalty into a prohibited multiple punishment," *United States v. Stoller*, 78 F.3d 710, 724 (1st Cir.), *cert. dismissed*, 117 S. Ct. 378 (1996). Similarly unpersuasive is the argument that a suspension is punitive because criminal liability may result from the same conduct that underlay the suspension, as it is well settled that the legislature "may impose both a criminal and a civil sanction in respect to the same act or omission." *Fitzgerald*, 137 N.H. at 26, 622 A.2d at 1246 (quotation omitted).

The defendant also suggests that the license suspension process is punitive because RSA 263:56 fails to provide for rescission of a license suspension upon acquittal of criminal charges, and because the negligent homicide statute empowers a sentencing court to revoke a defendant's license for "up to 7 years." RSA 630:3, III (Supp. 1993). Rather than supporting the defendant, these arguments bolster our conclusion that the administrative license suspension process is not punitive. The failure of RSA 263:56 to provide for rescission of a suspension confirms that the process serves a remedial purpose — highway safety — distinct from the punishment that would follow a criminal conviction based upon the same conduct. At the same time, RSA 630:3, III simply provides sentencing courts the ability to effectuate the administrative license suspension statute's remedial purpose once a jury has determined, beyond a reasonable doubt, that a defendant has caused "the death of another person" by "negligent driving of a motor vehicle."

■ In sum, the defendant does not dispute that the administrative license suspension process is civil, and he has not shown by the clearest proof that the suspension in this instance is so punitive as to be considered punishment for double jeopardy purposes. Conse-

quently, the trial court did not err in denying the defendant's motion to dismiss.

*Affirmed and remanded.*

All concurred.